IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOEL E. JIVIDEN,

        Plaintiff,

v.                                                          CIVIL ACTION NO. 3:12-04698

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Based upon its review of Plaintiff's objections and the record in this case, including the decision of the administrative law judge ("ALJ"), the Court **FINDS** that the ALJ's decision was made in accordance with applicable law and is supported by substantial evidence. Therefore, the Court **DENIES** Plaintiff's objections (ECF No. 18) and **ACCEPTS** and **INCORPORATES** the Proposed Findings and Recommendations ("PF&R") of the Magistrate Judge (ECF No. 17). The Court accordingly **GRANTS** the Commissioner's motion for judgment on the pleadings (ECF No. 15), **DENIES** the like motion of Plaintiff (ECF No. 12), and **DISMISSES with prejudice** Plaintiff's Complaint (ECF No. 2).

**I.    Procedural history**

On November 20, 2009, Plaintiff Joel E. Jividen filed an application for a period of disability and disability insurance benefits ("DIB"), in which he alleged a disability onset date of November 10, 2005. R. at 119-20. His application was denied by the Social Security Administration on January 25, 2010. *Id.* at 54-58. Plaintiff completed a request for

1

reconsideration on February 10, 2010. *Id.* at 61. On reconsideration, his application was again denied. *Id.* at 62-64. He subsequently requested a hearing before an ALJ concerning his application. *Id.* at 65-66. The requested hearing was held before the Honorable James J. Kent, ALJ, on December 15, 2010. *Id.* at 25-51. On December 29, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled under the terms of the Social Security Act. *Id.* at 13-20. Plaintiff requested review of this decision by the Appeals Council, but his request was denied on June 28, 2012. *Id.* at 1-3.

Plaintiff then commenced the instant civil action, pursuant to 42 U.S.C. § 405(g), asserting that he had exhausted his administrative remedies and requesting review of his application's denial. Compl., ECF No. 2. Both sides moved for judgment on the pleadings. Pl.'s Br. Supp. J. Pleadings, ECF No. 12; Def.'s Br. Supp. Def.'s Decision, ECF No. 15. This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued her PF&R on July 15, 2013, recommending that Plaintiff's motion for judgment on the pleadings be denied, that the Commissioner's motion for judgment on the pleadings be granted, and that this case be dismissed. PF&R, ECF No. 17. Plaintiff filed timely objections to the PF&R. Objections, ECF No. 18.

Section II discusses the applicable standard of review. Sections III through VI discuss each of Plaintiff's four objections to the PF&R.

## II.     Standard of review

This Court must "make a de novo determination of those portions of the . . . [Magistrate Judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, the scope of this Court's review of the Commissioner's decision is

narrow. This Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 42 U.S.C. § 405(g), which states, in part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") (other citations omitted), *superseded on other grounds,* 20 C.F.R. § 416.927(d)(2); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (also citing 42 U.S.C. § 405(g), among other authorities). "Substantial evidence" is defined as:

> "Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)); *see also Craig*, 76 F.3d at 589.

The ALJ, not the court, makes findings of fact and credibility determinations and resolves evidentiary conflicts. *Hays*, 907 F.2d at 1456. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner]'s designate, the ALJ).'" *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)). "The issue before [this Court], therefore, is not whether [Plaintiff] is disabled, but whether the [ALJ]'s finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). This Court is required to "uphold the [Commissioner]'s decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted).

### III.  Objection 1: The ALJ failed to comply with Social Security Ruling 96-8p in assessing Plaintiff's residual functional capacity[1]

Plaintiff argues in his Objections that the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p when determining his residual functional capacity ("RFC"). The Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (footnote omitted). Additionally,

> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must: [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; [i]nclude a resolution of any inconsistencies in the evidence as a whole; and [s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

*Id.*

The Court finds that the ALJ's decision complies with SSR 96-8p. As required by the Ruling, the ALJ discussed specific medical facts (such as information from Plaintiffs' MRIs and x-rays) and nonmedical evidence (such as Plaintiff's own description of his pain). R. at 15-19.

---

[1] Plaintiff outlines four objections. These four "objections," however, are in fact comprised of several more additional objections. For organizational purposes, the Court will use the same objection headings used by Plaintiff and will address each of Plaintiff's arguments according to the "objection" with which it corresponds.

The ALJ described the amount of work that Plaintiff could perform—albeit briefly—and adopted the state agency opinions as to Plaintiff's exertional and nonexertional limits. *Id.* at 19-20. The ALJ also explained how he resolved inconsistencies between Plaintiff's statements and Dr. Arvind Viridia's medical source statement, on the one hand, and the state agency opinions by Dr. Rogelio Lim and Dr. A. Rafael Gomez, on the other. The ALJ explained that he did not find Plaintiff's testimony credible because, based on the ALJ's assessment of the evidence, Plaintiff's testimony was not supported by "objective medical evidence." *Id.* at 18. Plaintiff had reported that he suffers from constant pain, weekly headaches lasting from one half hour to four hours, arthritis in his hands, shoulders, and back, and fibromyalgia. *Id.* He reported that he could only stand for fifteen minutes at a time and sit for thirty minutes at a time. *Id.* The ALJ noted, however, that MRIs reveal only minimal bulging. *Id.* Additionally, x-rays have revealed only minor problems, with the most recent x-ray, in 2006, showing negative cervical spine and no acute processes. *Id.*

In his medical source statement, Dr. Viridia concluded that Plaintiff would need to rest approximately six hours in an eight-hour workday and suggested other highly restrictive limitations. R. at 437-43. Although Dr. Viridia had seen Plaintiff monthly since February 2001, the ALJ gave no weight to Dr. Viridia's medical source statement because "imaging techniques do not reveal noteworthy problems." *Id.* at 19. In contrast, the ALJ found that information about Plaintiff's impairments supported the opinions of the state agency consultants. *Id.* The Court finds that the ALJ sufficiently explained why he found that Dr. Viridia's functional recommendations were inconsistent with the other evidence presented, and that the ALJ's findings in this area were supported by substantial evidence.

SSR 96-8p explains that medical opinions from a treating source must be given controlling weight in some circumstances: "If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight." SSR 96-8p, at *7. Here, substantial evidence supports the ALJ's finding that Dr. Viridia's medical source statement was not well-supported by medically-acceptable techniques. As explained above, the opinion was inconsistent with Dr. Lim's state agency consultant opinion and medical testing evidence. Under those circumstances, the ALJ was not required to give Dr. Viridia's opinion controlling weight.

Plaintiff also points to SSR 96-5p, which states that "adjudicators must evaluate opinion evidence from [state agency] medical or psychological consultants using all of the applicable rules in 20 CFR [§§] 404.1527 and 416.927 to determine the weight to be given to the opinion." SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996). Federal regulations detail the factors to be considered when evaluating a state agency consultant's medical opinion:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(ii) (discussing entitlement to disability income); *see also* § 404.1527(c) (describing in more detail the factors to be considered when weighing medical

opinions); § 416.927 (listing the same factors as § 404.1527 in the context of determining entitlement to supplemental security income).

Plaintiff also points to SSR 96-6p, which states,

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). That Ruling also provides, "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3.

The ALJ's decision states that he "considered opinion evidence in accordance with the requirements of 20 CFR [§] 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." R. at 17. The decision later states,

> I have . . . considered the state agency opinions . . . , which limit the claimant to the medium exertional level and with nonexertional limits and I find the combination of the claimant's severe impairments, and [sic] considering his less than favorable credibility, supports the limitation to the medium exertional level with the non-exertional limitations set forth above.

*Id.* at 19. Although the ALJ's discussion of the state agency opinions is brief and makes no explicit mention of certain applicable factors, the Court finds that the ALJ's discussion and consideration of relevant factors is sufficient to satisfy applicable law.

Plaintiff additionally argues that the RFC finding is "inadequate" because "while the ALJ found Plaintiff suffered from severe impairments of 'joint pain and weakness in the hands . . . ,' there are absolutely no manipulative limitations provided in the RFC and no explanation for how the limitations resulting from this severe impairment were considered to affect Plaintiff's RFC."

7

Objections at 4. It is true that the ALJ found that Plaintiff's joint pain and weakness in the hands were severe impairments, R. at 16, and that subsequent portions of the ALJ's decision do not discuss joint pain and hand weakness specifically, including the function-by-function assessment. However, the ALJ did note that, generally, the objective medical evidence did not support the extent of Plaintiff's complaints concerning pain. *Id.* at 18-19. This appears to explain why no limitation related to hands and joints was placed in the RFC. Additionally, the decision that manipulative limits were not necessary is consistent with Dr. Lim's state agency consultant opinion, R. at 355-62, which the ALJ credited. R. at 19.

Plaintiff additionally challenges the finding that Plaintiff's depressive disorder was not severe. Federal regulations describe the method of analysis in determining whether a mental disorder is severe:

> We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § 404, subpt. P, app. 1, 12.00(C). The ALJ found that Plaintiff had only "mild limitations" for the first three functional areas. R. at 16. As to the fourth functional area, Plaintiff had no extended episodes of decompensation. *Id.* Furthermore, the ALJ specifically noted that "[a] review of the record reveals no significant functional limitations from this impairment." *Id.* Dr. Viridia's treatment records sometimes note that Plaintiff has anxiety and/or depression. *Id.* at 304-43. However, Dr. Viridia never referred Plaintiff for a psychiatric evaluation or gave Plaintiff any medical treatment for this condition other than prescriptions for Cymbalta and

Lexapro. Lastly, Dr. Viridia's medical source statement notes that while Plaintiff is severely limited in his ability to deal with work stress, emotional factors do not contribute to the severity of Plaintiff's symptoms and functional limitations. *Id.* at 438. The Court therefore finds that the ALJ's finding that Plaintiff's depression is non-severe is supported by substantial evidence.

Plaintiff further argues that, even if his depression is non-severe, the ALJ was nonetheless required to consider how his depression may act in combination with Plaintiff's other impairments to limit his work-related activities. In support of this argument, he again points to SSR 96-8p, which states,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, at *5. Although the ALJ's RFC assessment does not mention depression specifically, it does note that the ALJ made the assessment having "considered all symptoms" and that he "evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms." R. at 17. The Court thus finds that the ALJ's decision constitutes sufficient consideration of whether Plaintiff's "non-severe" depression, together with this other impairments, impacted the work he was able to do. Furthermore, the Court finds that the ALJ's finding is supported by substantial evidence, as revealed by reviewing the evidence of depression in the record.

Plaintiff further argues that "the ALJ performed no function-by-function assessment whatsoever, making it impossible for any subsequent reviewer to determine whether the ALJ's RFC accounted for all of the limitations in the Plaintiff's functioning due to his severe impairments." Objections at 5. However, as noted above, the ALJ's decision includes detailed

9

discussion of the medical evidence and states Plaintiff's functional limitations. Moreover, the ALJ explained why he did not believe that the functional limitations recommended by Dr. Viridia were necessary, based on the objective medical evidence in the record. This constitutes a sufficient function-by-function assessment. *Cf. Vandervort v. Astrue*, No. CIV.A. TMD10-02671, 2013 WL 508987, at *2 (D. Md. Feb. 11, 2013) ("While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings.").

Lastly, Plaintiff argues that the Magistrate's PF&R is merely a post hoc rationalization of the ALJ's decision, citing to two Supreme Court cases: *National Labor Relations Board v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 n.1 (2001), and *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 87-88 (1943). However, neither case excerpt directly support this point, and the Court does not find the Magistrate's PF&R to be merely a post hoc rationalization of the ALJ's decision. In summary, Plaintiff's first objection is denied.

## IV. Objection 2: The ALJ committed reversible error in according inadequate weight to the opinion of Plaintiff's treating physician

Plaintiff's second objection is that the ALJ committed reversible error in according inadequate weight to the opinion of Plaintiff's treating physician. In support of this objection, Plaintiff argues that the ALJ did not consider the factors found in 20 C.F.R. § 404.1527 and § 416.927 when discussing Dr. Viridia's medical source statement. Section 404.1527(c) provides that, when deciding the weight to be given to a medical opinion, the ALJ must consider the following factors: 1) examining relationship; 2) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship; 3) supportability (such as evidence and explanations presented); 4) consistency with

the record as a whole; 5) the medical professional's specialization; and 6) other factors as necessary. *See also* § 416.927(c) (noting the same factors).

The ALJ's decision acknowledges the existence of treatment notes from Dr. Viridia starting in April 2002. R. at 15. At the hearing, Plaintiff's counsel stated on the record that Dr. Viridia had been treating Plaintiff monthly since February 2001, constituting over 100 visits. *Id.* at 29. It is clear that the ALJ considered Dr. Viridia's examining and treatment relationship with Plaintiff, as well as Dr. Viridia's specialization. Furthermore, the ALJ noted that although Dr. Viridia recommended significant limitations for Plaintiff—including the need for Plaintiff to rest for six hours in an eight-hour workday—"imaging techniques do not reveal noteworthy problems," citing Plaintiff's most recent MRI and x-ray. *Id.* at 19. This shows that the ALJ assessed the supportability of Dr. Viridia's opinion and its consistency with the record as a whole, ultimately finding that the opinion should be given no weight. Therefore, the ALJ considered all necessary factors, and again, all of the ALJ's findings regarding these factors are supported by substantial evidence.

Plaintiff points to SSR 96-2p for the proposition that the treating doctor's opinion should be granted deference.[2] *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996). The Ruling provides that, even when a medical source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927." *Id.* at *4. This Ruling indicates, however, that even a medical source opinion must still pass the rigor of the factors noted above, factors which the ALJ considered in this case. Rules passed by the Social Security Administration concerning the treatment of medical evidence state,

---

[2] That Ruling also discusses the circumstances under which the medical opinion of a treating source must be given controlling weight. Plaintiff does not argue in his objections that Dr. Viridia's opinion is entitled to controlling weight, and even if he did so argue, the Court would not find that the opinion is entitled to controlling weight.

11

> *All things being equal*, when a treating source has seen a claimant long enough to have obtained a detailed longitudinal picture of the claimant's impairment(s), we will always give greater weight to the treating source's opinion than to the opinions of nontreating sources even if the other opinions are also reasonable or even if the treating source's opinion is inconsistent with other substantial evidence of record. The rule also provides that, even if the treating source's opinion is not such that we can give it controlling weight, we will still give the opinion more weight than we would have given it if it came from a nontreating source.

Standards for Consultative Examinations & Existing Medical Evidence, 56 Fed. Reg. 36932-01, at *36936 (Aug. 1, 1991) (emphasis added). However, substantial evidence supports the ALJ's finding here that not all things were equal—namely, no medical evidence supported the drastic limitations recommended by Dr. Viridia. Therefore, the ALJ's decision not to give greater weight to Dr. Viridia's opinion does not violate applicable law.

SSR 96-2p further provides that if the application is denied, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5. Indeed, "[p]aragraph (d)(2) of 20 CFR [§§] 404.1527 and 416.927 requires that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." *Id.* Here, the ALJ gave specific, detailed reasons, supported by the available medical records, for his decision not to give any weight to Dr. Viridia's medical source opinion. Contrary to Plaintiff's arguments, sufficient "good reasons" were presented in the decision to support the ALJ's finding in this regard. In summary, Plaintiff's second objection is denied.

**V.  Objection 3: The ALJ did not provide a specific finding or analysis regarding the physical and mental demands of Plaintiff's past relevant work as required by Social Security Ruling 82-62**

Plaintiff argues that the ALJ's decision violates SSR 82-62, which discusses a claimant's ability to do past relevant work. SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809 (Jan. 1, 1982). According to Plaintiff, this Ruling mandates that "the ALJ's decision include detailed information about strength, endurance, manipulative ability, mental demands and other job requirements of past relevant work." Objections at 7. That is not what the Ruling demands, however. The Ruling instead states, "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements *must be obtained* as appropriate" when making the RFC determination. SSR 82-62, at *3 (emphasis added). Therefore, the ALJ is not required to specifically address each of these job-related abilities in the decision, so long as there is appropriate evidence in the record about such abilities. Here, the ALJ possessed sufficient detailed information about all of these facets of Plaintiff's past work when making his decision. Significant testimony about Plaintiff's past job duties and demands was developed during the hearing. R. at 31-34, 46-51.

In order to find that the claimant can perform past relevant work, the ALJ must make findings of fact about the applicant's RFC, about the physical and mental demands of the applicant's past job, and about whether the claimant's RFC allows him to return to that job. SSR 82-62, at *4. Plaintiff argues that the ALJ did not properly assess his RFC, especially in light of the many severe impairments Plaintiff has—including joint pain and hand weakness—and the vocational expert's testimony about the demands of Plaintiff's past job, which include reaching, handling, and fingering. The Court, however, disagrees. The ALJ properly assessed Plaintiff's RFC, especially taking into account Plaintiff's past work as the owner and operation of company that does natural gas work, as discussed by the Magistrate Judge, and other substantial evidence.

13

## VI.     Objection 4: The ALJ committed reversible error in failing to order a psychological consultative examination

Plaintiff argues that the ALJ should have ordered a psychological consultative examination based on the evidence in the record regarding Plaintiff's mental health and because of "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson v. Perales,* 402 U.S. 389, 400–01 (1971)) (also noting that Social Security proceedings are inquisitorial, not adversarial). While the ALJ sometimes has a duty to make further inquiry into a medical issue beyond the immediate record, this duty only arises in certain circumstances, such as where the ALJ cannot make a reasoned decision based on the information presented. *See Dorn v. Astrue*, No. 10-CV-3923 JFB, 2012 WL 925713, at *7-10 (E.D.N.Y. Mar. 19, 2012). The record in this case creates a largely coherent and consistent picture of Plaintiff's anxiety and depression, showing it to be a minor issue. As discussed above, although Dr. Viridia's treatment records sometimes note that Plaintiff has anxiety and/or depression, Plaintiff was never referred for a psychiatric evaluation or given any medical treatment for his mental health conditions other than prescriptions for Cymbalta and Lexapro. Lastly, Dr. Viridia's medical source statement notes that, while Plaintiff is severely limited in his ability to deal with work stress, emotional factors do not contribute to the severity of his symptoms and functional limitations. Difficulties in dealing with work stress do not necessarily mandate a psychological evaluation, especially given the other evidence in the record about Plaintiff's mental health. In the face of this evidence, there was no duty for the ALJ to further develop the evidence about Plaintiff's mental health. Applicable law and substantial evidence support the ALJ's decision to not order a consultative evaluation.

Plaintiff cites the Second Circuit case of *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), for the proposition that the ALJ cannot arbitrarily rest on his own medical opinions rather than those of a doctor:

> [I]n this case the Commissioner failed to offer and the ALJ did not cite *any* medical opinion to dispute the treating physicians' conclusions that Balsamo could not perform sedentary work. In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.

*Id.* at 81 (emphasis in original) (citations omitted) (internal quotation marks omitted). *Balsamo*, however, is distinguishable from the instant case. While the ALJ in *Balsamo* did not point to any medical opinion evidence to support his conclusions, here the ALJ *did* cite to medical evidence to support his findings whenever those findings conflicted with Dr. Viridia's medical source statement. Therefore, this is not a situation where the ALJ has impermissibly replaced a doctor's opinion with his own judgment as to resolution of a medical issue. *See also Bloom v. Astrue*, No. CIV. SKG-08-827, 2009 WL 2449877, at *21 (D. Md. Aug. 7, 2009) (discussing evidence cited by the ALJ to support findings). Even more importantly, it is clear that the ALJ has not substituted his own judgment regarding Plaintiff's mental health issues for medical opinions because, as explained above, the ALJ's findings are consistent with the medical record.

Lastly, Plaintiff argues that the approach taken by the Magistrate regarding Dr. Viridia's medical source statement is internally inconsistent. Specifically, Plaintiff faults the Magistrate for approving the ALJ's decision to give "no weight" to Dr. Viridia's opinion on the one hand, yet justifying the findings about Plaintiff's depression using a portion of that same medical opinion. Plaintiff suggests that it is inconsistent to follow Dr. Viridia's recommendations regarding the effect of Plaintiff's depression, yet ignore Dr. Viridia's recommendations about

work-related limitations. The ALJ, however, is not required to adopt or reject a medical source statement in its entirety. Rather, that ALJ may consider solely those portions which are consistent with the record as a whole. Furthermore, although the ALJ did state that he gave Dr. Viridia's opinion "no weight," it is clear, upon a review of the whole decision, that the ALJ was only referring to Dr. Viridia's recommendations as to Plaintiff's functional limitations. This slight imprecision in the wording of the ALJ's opinion is not reversible error.

In summary, for the reasons stated above, the ALJ did not err by not ordering a psychological evaluation, and Plaintiff's objection is denied.

## VII.    Conclusion

For the reasons explained above, the Court **DENIES** Plaintiff's objections (ECF No. 18) and **ACCEPTS** and **INCORPORATES** the PF&R of the Magistrate Judge (ECF No. 17). The Court **GRANTS** the Commissioner's motion for judgment on the pleadings (ECF No. 15), **DENIES** the like motion of Plaintiff (ECF No. 12), and **DISMISSES with prejudice** Plaintiff's Complaint (ECF No. 2).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to Magistrate Judge Eifert, counsel of record and any unrepresented parties.

ENTER: March 31, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE